JiDOUCET, Chief Judge.
This ease concerns the validity of a rejection of uninsured/underinsured motorist coverage (UM).
On November 11, 1991, Donald Richard was driving his vehicle west on U.S. Highway 90 when he was hit from behind by the vehicle driven by Kenneth L. Cormier. Donald Richard and his wife, Holly, filed suit against Cormier and his insurer. They also named as a defendant their own insurer, Shelter Mutual Insurance Company (Shelter), asking for UM benefits. The Richards’ claims against Cormier were settled. Shelter denied the claim for UM benefits based on a rejection of UM benefits signed by Holly Richard. A trial was held to determine the validity of the Rrejection of UM. The trial judge found that the rejection was valid and dismissed the claim against Shelter. The Richards appeal.
VALIDITY OF THE REJECTION FORM
The Richards assert that the UM rejection form used by Shelter is so defective as to render their rejection invalid.
Uninsured motorist coverage is required under an automobile insurance policy in not less than the limits of bodily injury liability unless the named insured rejects the coverage or selects lower limits. La. R.S. 22:1406(D)(l)(a)(i). The insured is afforded three options regarding UM cover *776 age: 1) UM coverage with limits equal to the policy’s bodily injury limits, 2) UM coverage with limits lower than the policy’s bodily injury limits, or 3) no UM coverage. Tugwell v. State Farm Ins. Company, 609 So.2d 195 (La.1992); Banks v. Patterson Ins. Company, 94-1176 (La.App. 1 Cir. 9/14/95), 664 So.2d 127, writ denied, 95-2951 (La.2/16/96), 667 So.2d 1052.
The rejection or selection of lower limits must be done on a form provided by the insurer and signed by the named insured or a representative. La.R.S. 22:1406(D)(l)(a)(ii). The applicant must be given an opportunity to make a meaningful selection from the options available on the form employed by the insurer. Tugwell, 609 So.2d 195. The rejection “must be expressed clearly, unambiguously and unmistakably.” Henson v. Safeco Ins. Companies, 585 So.2d 534, 538 (La.1991).
Longo v. Bercegeay, 96-1129, p. 1 (La.App. 3 Cir. 3/5/97), 692 So.2d 531. The Richards assert that the form used by Shelter did not allow them to make a meaningful selection from the options provided by the statute, first in that it failed to give them the option of selecting UM.
The Shelter form contains the following language with regard to the choices available:
UNINSURED MOTORISTS (UM) COVERAGE
Rejection of UM Coverage or Selection of Limits of UM Coverage
Uninsured Motorists (UM) Coverage affords protection for Insureds defined by the policy who are legally entitled to recov-erjjjdamages for bodily injury, sickness, or disease, including death, from owners or operators of uninsured or underinsured motor vehicles. State law requires Insurance companies to deliver or issue automobile policies with limits of UM Coverage equal to the limits of liability insurance for Bodily Injury (BI) Coverage unless the insured elects otherwise.
If you do not want limits of UM Coverage equal to your limits of BI Coverage, you may select lower limits or reject UM Coverage entirely by indicating your selection or rejection below.
□ I select lower limits of UM Coverage
$_u. per person
$_ — __ per accident
□ I reject UM Coverage entirely.
The Louisiana Supreme Court in Daigle v. Authement, 96-1662, p. 6 (La.4/8/97), 691 So.2d 1213, 1216, rejected an argument that a place for acceptance of UM coverage must be included to allow a meaningful selection or rejection:
Moreover in Henson [v. Safeco Insurance Companies, 585 So.2d 534 (La.1991) ],we held that the statute does not require an affirmative act to choose coverage. Any affirmative signature or mark accepting coverage would be mere surplusage, since the coverage is automatically extended by operation of law. An applicant does not have to sign a separate document opting for coverage already provided in the policy. Such a document could be thrown away after the insured’s execution of it without any effect whatsoever. The statute requires an affirmative act only if UM coverage is rejected altogether or, in an appropriate case,- where lower UM limits are statutorily permitted and desired. Accordingly, we cannot conclude that Louisiana Indemnity’s failure to set up its form so as to require a penstroke in favor of coverage renders the form defective.
See also Martin v. CNA Insurance Co., 96-1342 (La.App. 3 Cir. 4/2/97), 692 So.2d 677.
Therefore, the failure of Shelter to include on its form a place to elect UM coverage does not invalidate the Richards’ rejection of UM.
The Richards next argue that the form is defective in that it contains a space for an election of lower limits in spite of the fact that lower limits were not available to | Ahem because they had minimum insurance coverage. The jurisprudence indicates that a form for rejection of UM coverage need not in- *777 elude a space for election of lower limits where such an election is foreclosed by law. Daigle, 96-1662 at' p. 4. However, we find nothing to indicate that the form must not include a space for such an election. Given the record before us, we cannot say that the inclusion of the space for election of lower limits invalidates the plaintiffs’ rejection of UM. There is nothing of record to indicate that the plaintiffs wanted to elect lower limits or attempted to do so. Accordingly, we find, no error in the trial court’s determination that the Shelter form was an appropriate and effective vehicle for rejection of UM coverage.
ADEQUACY OF EXPLANATION OF COVERAGE
Finally, the Richards assert that the trial judge erred in finding that they were properly informed about UM coverage by their insurance agent, Paul Reon. The plaintiffs admit that the form was signed by Holly Richard. However, they argue that because Reon gave them no explanation of the UM rejection form and brushed off their questions by telling them it was coverage that they did not need, they were unable to make a meaningful selection among the options available to them. Reon, on the .other hand, testified that he always explains UM coverage as fully as his clients will allow. He explained that it is in his interest to do so because the explanation gives him the opportunity to sell more coverage and increase his commission. He stated that in the time he sold insurance to the Richards, they were never interested in buying more than the minimum insurance required by law or by the vehicle’s lien holder.
|5The plaintiffs further argue that the trial court erred in applying the ruling of Thomas v. Goodson, 26,356 (La.App. 2 Cir. 12/7/94), 647 So.2d 1192. They argue that the rejection form and the circumstances of the rejection more nearly parallel those in Henson, 585 So.2d 534, wherein the court found that the form in which the rejection of UM was made did not allow a meaningful selection of coverage. We find that the trial court was correct in concluding that the circumstances of this case more nearly parallel those of Thomas than those of Henson. It is true that in Henson, as in this case, the actual X marking the rejection box was made by the agent rather than the insured. However, in Henson, the supreme court described the location of the box to be marked for rejection as inconspicuous. The rejection of UM coverage was included in the general application for insurance. There was no separate signature line for the insured to sign or initial to indicate rejection of UM coverage. Henson does not discuss the consequences of discussions of UM coverage by the agent and the potential insureds. Further, it is interesting to note that the court in Henson cites with approval the case of Guilbeau v. Gabriel, 553 So.2d 1078 (La.App. 3 Cir.1989), cert. denied, 559 So.2d 138 in which this court held that the insured’s signing of a separate rejection clause constituted a valid rejection of UM insurance, even though the insured did not recall being offered UM coverage. In the case currently before us, as in Thomas, the insurer provided a separate form for the rejection of UM. The form itself informs the insured of his or her options with regard to UM and advises that, if the form is not signed, UM equal to the limits of liability coverage will be provided. The court in Thomas, 647 So.2d at 1195, correctly noted that: “Although plaintiffs argue that the rejection was invalid because the rejection boxes were checked by the insurance agent, this fact alone does not invalidate the rejection. | eHenson says the applicant may either mark the boxes himself or sign or initial the insurer’s mark.” In this case, there is evidence to indicate that UM coverage was explained to the insureds. Further, Holly Richard signed a separate form for rejection of UM which indicated the options available to her. As the court stated in Thomas: “A person who signs a written document is presumed to have knowledge and understanding of that which he signs. Oncale v. Aetna Casualty and Surety Co., 417 So.2d 471 (La.App. 1st Cir.1982). We further note that Oncale was cited by the supreme court in Henson.” Id.
Given the facts and circumstances of this case and the evidence of record, we find that the trial court did not err in finding that the Richards must be presumed to have knowledge and- understanding of the rejection of *778 UM and that the rejection was valid and effective.
CONCLUSION
The judgment of the trial court is affirmed. Costs of this appeal are assessed to the plaintiffs/appellants.
AFFIRMED.