JjDOUCET, Chief Judge.
The only issue before this court is the granting, by the trial judge, of the Defendant insurer’s Motion for Summary Judgment finding that the Plaintiffs had entered into a valid exclusion of underinsured/uninsured motorist (UM) coverage. The plaintiffs appeal. For the following reasons, we affirm.
FACTS
This suit stems from a 1996 automobile accident in which Plaintiffs, Bonnie Pellerin and her minor daughter, allegedly sustained injuries. Mrs. Pellerin and her husband, Mervyn Pellerin, filed suit, individually and on behalf of their minor children, against the driver of the other vehicle involved in the accident, Brent Thibodeaux, his automobile insurance provider, International Indemnity Company, Land their own automobile insurance provider, Louisiana Farm Bureau Casualty Insurance Company.
Plaintiffs contend that, at the time of the accident, Farm Bureau provided Mrs. Pelle-rin with uninsured/underinsured motorist insurance coverage. However, upon Farm Bureau’s motion, the trial judge granted summary judgment finding that Mrs. Pelle-rin had entered into a valid rejection of the UM provision of her insurance coverage.
The Pellerins now appeal and argue that the trial court erred in finding that the UM rejection form constituted a valid waiver of coverage pursuant to La.R.S. 22:1406(D)(l)(a)(i).
LAW AND DISCUSSION
The Plaintiffs contend that the form rejecting UM coverage, although signed by Bonnie Pellerin, did “not state in ‘plain and unambiguous language’ that Louisiana law requires all automobile liability policies issued or delivered in the state to afford uninsured motorist coverage unless the insured rejects such coverage.” Rather, the form provides only the options of rejecting UM coverage or selecting lower limits. Therefore, the Plain *132 tiffs argue that Bonnie PeUerin’s signature did not constitute a meaningful waiver of UM coverage.
In Richard v. Cormier, 97-212, p. 2 (La. App. 3 Cir. 10/8/97); 702 So.2d 775, 775-776, quoting Longo v. Bercegeay, 96-1129, p. 1 (La.App. 3 Cir. 3/5/97), 692 So.2d 531, this court discussed the validity of UM rejection forms, stating:
Uninsured motorist coverage is required under an automobile insurance policy in not less than the limits of bodily injury liability unless the named insured rejects the coverage or selects lower limits. La. R.S. 22:1406(D)(l)(a)(i). The insured is afforded three options regarding UM coverage: 1) UM coverage with limits equal to the policy’s bodily injury limits, 2) UM coverage with limits lower than the |3policy’s bodily injury limits, or 3) no UM coverage. Tugwell v. State Farm Ins. Company, 609 So.2d 195 (La.1992); Banks v. Patterson Ins. Company, 94-1176 (La.App. 1 Cir. 9/14/95), 664 So.2d 127, writ denied, 95-2951 (La.2/16/96), 667 So.2d 1052.
The rejection or selection of lower limits must be done on a form provided by the insurer and signed by the named insured or a representative. La.R.S. 22:1406(D)(l)(a)(ii). The applicant must be given an opportunity to make a meaningful selection from the options available on the form employed by the insurer. Tugwell, 609 So.2d 195. The rejection “must be expressed clearly, unambiguously and unmistakably.” Henson v. Safeco Ins. Companies, 585 So.2d 534, 538 (La.1991).
The form on which this rejection must be perfected was not, at the time this matter was before the lower court, statutorily mandated. Rather, La.R.S. 22:1406(D)(l)(a)(ii)[1] provided only that:
After September 1, 1987, such rejection or selection of lower limits shall be made only on a form designed by each insurer. The form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.
|4The policy bought by Mi’s. Pellerin, afforded the minimum required liability coverage. The rejection form, which forms part of the policy, provides the following options:
□ I reject uninsured □ I select limits of motorist coverage. uninsured motorist coverage.
Signature Date Signature Date
Mrs. Pellerin placed an “X” in the left hand box and signed and dated (5/24/94) the rejection form. The form was also signed and dated by 'a representative of her insurance company.
The Louisiana Supreme Court, in Daigle v. Authement, 96-1662, p. 4 (La.4/8/97); 691 So.2d 1213, 1215, (footnotes omitted) approved a rejection form which simply read “I have been offered and I hereby reject Uninsured Motorist Bodily Injury coverage” stating:
[Wjhen an applicant elects to purchase only the minimum bodily injury limits al- *133 Iowable, the option of selecting UM coverage at limits lower that [sic] those in the policy is foreclosed' by law pursuant to La.R.S. 22:1406 D(l)(a)(i) and La.R.S. 32:900(B)(2). Because Daigle purchased bodily injury coverage in the minimum available limits, she could not lawfully opt to have UM coverage at lower limits. Accordingly, the form used by Louisiana Indemnity did not have to inform her of an unavailable option.
Daigle had only two options open to her under La.R.S. 22:1406, the statutorily mandated UM coverage or none at all. Louisiana Indemnity had to inform her of those two options and give her the opportunity to select between them. In our view, the form designed by Louisiana Indemnity did so in a manner sufficient to permit a valid rejection of UM coverage.
Additionally, in Richard v. Cormier, 97-212, pp. 3-4; 702 So.2d 775, 776-777, this court observed:
IsThe Louisiana Supreme Court in Daigle v. Authement, 96-1662, p. 6 (La.4/8/97), 691 So.2d 1213, 1216, rejected an argument that a place for acceptance of UM coverage must be included to allow a meaningful selection or rejection:
Moreover in Henson [v. Safeco Insurance Companies, 585 So.2d 534 (La. 1991) ], we held that the statute does not require an affirmative act to choose coverage. Any affirmative signature or mark accepting coverage would be mere surplusage, since the coverage is automatically extended by operation of law. An applicant does not have to sign a separate document opting for coverage already provided in the policy. Such a document could be thrown away after the insured’s execution of it without any effect whatsoever. The statute requires an affirmative act only if UM coverage is rejected altogether or, in an appropriate case,' where lower UM limits are statutorily permitted and desired. Accordingly, we cannot conclude that Louisiana Indemnity’s failure to set up its form so as to require a penstroke in favor of coverage renders the form defective.
See also Martin v. CNA Insurance Co., 96-1342 (La.App. 3 Cir. 4/2/97), 692 So.2d 677.
Therefore, the failure of Shelter to include on its form a place to elect UM coverage does not invalidate the Richards’ rejection of UM.
The Richards next argue that the form is defective in that it contains a space for an election of lower limits in spite of the fact that lower limits were not available to them because they had minimum insurance coverage. The jurisprudence indicates that a form for rejection of UM coverage need not include a space for election of lower limits where such an election is foreclosed by law. Daigle, 96-1662 at p. 4. However, we find nothing to indicate that the form must not include a space for such an election. Given the record before us, we cannot say that the inclusion of the space for election of lower limits invalidates the plaintiffs’ rejection of UM. There is nothing of record to indicate that the plaintiffs wanted to elect lower limits or attempted to do so. Accordingly, we find no error in the trial court’s determination that the Shelter form was an appropriate and effective vehicle for rejection of UM coverage.
In Scott v. McDaniel, 96-1509, pp. 4-5 (La.App. 1 Cir. 5/9/97); 694 So.2d 1189, 1191-1192, writ denied, 97-1551 (La.9/26/97); 701 So.2d 991, ora; brethren |6of the First Circuit, with whom we agree, in reviewing the law applicable to summary judgments and the effect of the 1996 amendment to same, stated:
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Adamson v. State Farm Mutual Automobile Insurance Co., 95-2450, p. 5 (La.App. 1st Cir. 6/28/96); 676 So.2d 227, 230. Appellate, courts review summary judgment de novo, using the same criteria applied by the trial courts in determining whether summary judgment is appropriate. Madden v. Bourgeois, 95-2354 p. 3 (La.App. 1st Cir. 6/28/96); 676 So.2d 790, 792. The motion should be granted only if the pleadings, depositions, answers to in *134 terrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. By-Acts 1996, First Extraordinary Session, No. 9, the legislature amended La.C.C.P. art. 966, effective May 1, 1996, by adding the following provision:
A. (2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish these ends.
The language of the amendment tracks the language of Federal Rule of Civil Procedure 56, and is designed to allow courts to decide whether enough evidence exists to go to trial, thus giving judges an opportunity to weed out meritless litigation. Tybussek v. Wong, 96-1981 (La.App. 4th Cir. 2/26/97); 690 So.2d 225, 229-30. This provision changes the law to the extent that summary judgments are now proclaimed to be “favored” and thus the rules should be liberally applied; whereas before the amendment, summary judgments were not favored and the provisions were strictly construed. See e.g. Penalber v. Blount, 550 So.2d 577, 583 (La.1989). However, the 1996 amendments are merely declarative of existing law concerning genuine issues of material fact and burdens of proof applied to a summary judgment proceeding. The burden is still on the mover first to show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Only after the mover has met this initial burden may summary judgment be rendered against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim. La.C.C.P. art. 966 B and C. Once a party seeking a summary judgment properly supports the motion and carries his burden of proof, the amended law requires the non-moving party who opposes the motion for summary judgment to submit evidence showing the existence of specific facts establishing a genuine issue of material fact, effectively shifting the burden of proof to the non-moving party. See McKey v. General Motors Corp., 96-0755 (La.App. 1st Cir. |72/14/97), 691 So.2d 164. Although La.C.C.P. art. 966 G states “notwithstanding any other provision of the Article to the contrary, the burden of proof shall remain with the mover,” the effect of the amendment is that the non-moving party is no longer allowed to rely on the allegations of its pleadings in opposition to a properly supported motion for summary judgment. Tybussek v. Wong, 690 So.2d at 230.
Our review of the record, the law, and the jurisprudence convinces us that the trial judge was correct in his decision to grant Defendant’s Motion for Summary Judgment. There is no doubt, but that Mrs. Pellerin validly rejected UM coverage, that there is no genuine issue of material fact, and that Louisiana Farm Bureau is entitled to judgment as a matter of law.
DECREE
For the foregoing reasons, the decision of the lower court is affirmed. All costs of this appeal are assigned to the Plaintiffs/Appellants.
AFFIRMED.
AMY, J., dissents and assigns reasons.

. In 1997, the legislature revised La.R.S. 22:1406(D)(l)(a)(ii) by Act 1997, No. 1476 which now requires that such a rejection or selection of lower limits be made on a form prescribed by the commissioner of insurance. The revised statute provides:
After September 1, 1987, such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. Any form executed prior to the effective date of this Act shall be valid only until the policy renewal date; thereafter, the rejection, selection of lower limits, or selection of economic-only coverage shall be on a form prescribed by the commissioner as provided in this Subsection.