OPINION OF THE COURT
Richard J. Goldman, J.
Can a jury consider sales tax in determining the market value of stolen property? People v Barbuto (106 Misc 2d 542) said "No”. This court disagrees.
It is alleged that defendant and another, on or about February 24, 1986, stole a television from its owner. In addition to other charges, defendant was indicted fqr grand larceny in the third degree (stealing property having a value in excess of $250).
On November 24, 1987, codefendant pleaded guilty to burglary in the second degree (Penal Law § 140.25) in satisfaction of the indictment.
*1004 On December 14, 1987, defendant’s trial commenced. Evidence at trial indicated that on February 24, 1986 defendant and codefendant entered the complainant’s Kings County apartment and removed a television set without her permission. The owner testified that the television set was purchased a few days prior to the alleged crime for $260, including sales tax.
The court submitted to the jury one count each of burglary in the second degree, grand larceny in the third degree and petit larceny.
In instructing the jury on the element of "value”, the court took judicial notice that of the alleged $260 purchase price, approximately $240.50 constituted the retail price, while approximately $19.50 constituted the sales tax (Richardson, Evidence § 9 [Prince 10th ed]). The court instructed the jury that "[i]n determining market value you may consider the sales tax paid or to be paid on a particular item at the time and place of the crime.”[1] Defendant objected to this charge.
In People v Barbuto (106 Misc 2d 542, supra), the court held that the sales tax is not a component of value in a larceny prosecution. It noted that the Tax Law indicates that the selling price of goods and the sales tax imposed thereon are distinct items. The court reasoned that the retailer "establishes value by the freely negotiated price and in addition collects a tax for the benefit of the State and locality” and concluded "that while a sales tax may increase the cost of an object it does not increase the value thereof” (People v Barbuto, supra, at 544; italics in original). This court respectfully disagrees with Barbuto’s reasoning because it equates selling price with market value.
Penal Law § 155.20 (1) defines value as "the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime.”[2]
The market value of an item is " 'the price at which * * * [the item] would probably have been sold in the regular course of business’ ” (People v Alicea, 25 NY2d 685, 687, quoting *1005 from People v Irrizari, 5 NY2d 142, 146). It is " 'the price which a well-informed buyer would pay to a well-informed seller, where neither is obliged to enter into the transaction’ ” (State v Coleman, 19 Wash App 549, 551, 576 P2d 925, 926, quoting from State v Clark, 13 Wash App 782, 787, 537 P2d 820, 824).[3] This agreed-upon price results from the interaction of supply (the quantity of goods that a manufacturer would supply at various market prices) and demand (the quantity of goods that a buyer would purchase at various prices) (Encyclopedia of Economics [DPG Reference Publ 1981]).
A myriad of factors influences the price at which a seller is willing to sell an item. The presence of competitors producing the same or similar product, the product’s prevalence in the marketplace, and technological advancements insuring lower production costs each tend to lower the seller’s asking price for that product (Silk, Economics in Plain English, at 68-74 [1978]). Increased labor costs and the product’s scarcity in the market are factors which generally increase the seller’s desired price for that product (Silk, Economics in Plain English, at 68-74 [1978]). The price the seller purchased the item from his seller also influences the price at which he is willing to sell.
The price that a consumer is willing to pay for a particular item is similarly affected by a multitude of factors. Increases in the consumer spending power, the uniqueness of the product, and the popularity of the product tend to increase the price that consumers will pay for that product (Silk, Economics in Plain English, at 68-74 [1978]). Consumers are generally willing to spend less for a product which has an acceptable "substitute” in the market or which does not enjoy public desirability (Silk, Economics in Plain English, at 68-74 [1978]).
The market attains an "equilibrium” point resulting from the interplay of these factors. At this point, the sellers are selling the quantity of goods they wish to sell at their desired price and the consumers are purchasing the amount of goods they wish to purchase at their desired price. This consensual *1006 price represents the item’s market value (Encyclopedia of Economics [DPG Reference Publ 1981]).
The purchase price paid by a particular buyer is probative of an item’s market value and in some cases may provide sufficient circumstantial evidence to establish market value (People v James, 111 AD2d 254, 255, affd 67 NY2d 662). However, "value and price are not necessarily synonymous” (Plaza Hotel v Wellington, 37 NY2d 273, 277, rearg denied 37 NY2d 924). The price paid for an item merely reflects the agreement reached between a particular seller and a particular buyer. It does not establish market value since it is not necessarily the price upon which buyers and sellers would generally agree in the marketplace.[4]
The market value of an item must be established "at the time when and the place where” it was stolen (People v Irrizari, 5 NY2d 142, 146, supra). Market value is not "the value of the goods in the market in which the owner had purchased them or in which he could replace them, but the value in the market in which the goods were being traded” (People v Irrizari, supra, at 146; emphasis supplied).
Thus, market value of goods stolen from a wholesaler is determined by their value in the wholesale market (United States v Perry, 638 F2d 862, 865; United States v Tippett, 353 F2d 335, 338; State v Callaghan, 33 Ore App 49, 576 P2d 14, 19). Where goods are stolen from a retail store, however, market value is not determined with reference to the wholesaler’s market. The market value of these goods is higher in the hands of the retailers, since they must ask a higher selling price in the market to cover the costs of advertising and promotion (People v Irrizari, 5 NY2d 142, 146 supra).[5] The market value of goods stolen from a retail store is to be determined by the retail market (People v Irrizari, supra, at 146; see also, State v Barker, 211 Mont 452, 685 P2d 357, 360).
In the case at bar, the television set was allegedly stolen from a Kings County apartment several days after purchase. *1007 The "time and place” requirement mandates that the market value of this item be established in the postwholesale, postretail market, i.e., in the consumer-seller market (People v Irrizari, 5 NY2d 142, 146, supra).
This television set is subject to sales tax in the Kings County consumer market. The "well-informed” potential seller in this market would consider the amount of sales tax he/she paid when purchasing this item, as well as the sales tax due on the item’s resale, and seek to pass this cost on to the potential buyer. Thus, sales tax is a factor which influences the cost that a seller would charge for this television set.
The "well-informed” buyer in the Kings County consumer market would also consider the sales tax cost in determining what he/she would pay for the television set.[6] The court notes that consumers travel to other "markets” to purchase an item simply to avoid the imposition of a sales tax. However, the buyer in the Kings County consumer market must decide whether to pay more for the television set in this' market to cover the cost of sales tax or to incur expenses to purchase it in a jurisdiction without a sales tax.
Therefore, this cost of a sales is a factor which influences the consensually agreed-upon price (the "equilibrium” point) for this television set. Since the sales tax to be paid affects the price that a "willing seller” would charge and a "willing buyer” would pay for this item, it is a component of the television set’s market value in the Kings County consumer market.
State v Alexander (12 Kan App 2d 1, 732 P2d 814) and Tunnell v State (99 NM 446, 659 P2d 898), each holding that sales tax is not a component of market value, are distinguishable from the case at bar. In those cases, items were stolen from retail stores and their market values had to be determined in the retailer's market. Sales tax is not a factor in the retail market since no sales occurred and the stores were not mandated to collect and remit a sales tax to the State (State v *1008 Alexander, 12 Kan App 2d 1, 732 P2d 814, 817, supra; Tunnell v State, 99 NM 446, 659 P2d 898, 899, supra).[7]
CONCLUSION
For the reasons discussed above, the jury was instructed to consider sales tax as a component of the television set’s market value.

. At the time of the commission of this crime, grand larceny in the third degree required proof that the stolen item had a value in excess of $250. Grand larceny in the third degree was amended, eifective November 1, 1986.

. The "cost of replacement” test will not be utilized since there is no indication that market value cannot be satisfactorily ascertained.

. This test of market value is utilized, inter alia, in eminent domain proceedings (United States v Miller, 317 US 369, reh denied 318 US 798) and criminal prosecutions for transporting stolen goods in interstate commerce (United States v Perry, 638 F2d 862; Cave v United States, 390 F2d 58, cert denied 392 US 906; Herman v United States, 289 F2d 362, cert denied 368 US 897) and criminal prosecutions for receiving stolen goods which were transported in interstate commerce (United States v Tippett, 353 F2d 335, cert denied 383 US 908).

. Barbuto’s reliance on the Tax Law is misplaced. While this court concedes that the Tax Law distinguishes between the selling price of goods and the relevant sales tax, People v Barbuto (106 Misc 2d 542) offers no explanation why the former should be equated with value.

. As the Irrizari court noted: "To accept wholesale value in such a case [where goods are stolen from a retail store] would be to ignore the facts of economic life. Stated very simply, it is the retailer’s function in our economy to move goods to the consuming public and, in the process, the market value of the goods is unquestionably enhanced” (People v Irrizari, 5 NY2d 142, 146).

. In People ex rel. Brown v Purdy (186 App Div 54, affd on opn below 226 NY 635) an assessment was to be charged to a certain parcel of realty due to the beneficial effect of the extinguishment of easements on that property. In discussing the land’s value for municipal tax purposes, the court noted that "a purchaser in determining the price which he would be willing to pay for this property, knowing it was certain * * * that an assessment of say $1,000 would be imposed upon this property, would deduct $1,000 from the purchase price which he would otherwise be willing to pay” (People ex rel. Brown v Purdy, supra, at 57).

. In State v Cochran (191 Conn 180, 463 A2d 618), the issue of whether sales tax is part of market value was not decided, since both parties stipulated that it was not.