OPINION OF THE COURT
George B. Daniels, J.
This case raises an important and fundamental question of *260 criminal law over which trial courts are in disagreement. Should the sales tax imposed on a retail sale be included when determining the value of stolen property? The only two Supreme Court decisions which have considered the issue disagree on whether both the pretax selling price and the sales' tax should be included. This conflict among the trial courts has not been directly addressed by any appellate court. The addition of sales tax will in some cases raise the crime charged from a misdemeanor to a felony, or to a higher class of felony, thereby significantly enhancing the seriousness of the offense and the penalty to be imposed.
The defendant Mohamed Medjdoubi was charged with grand larceny in the fourth degree (Penal Law § 155.30), two counts of criminal possession of stolen property in the fourth degree. (Penal Law § 165.45 [1], [2]), and forgery in the second degree (Penal Law § 170.10). The defendant absconded just prior to jury selection, and he was tried in absentia. The defendant had been videotaped unlawfully using a stolen credit card to purchase a leather jacket and two shirts at Saks Fifth Avenue department store. The total sale price of the merchandise was $1,000. With 81U% sales tax, the final cost charged to the credit card was $1,082.50.
At the conclusion of the People’s case, the defense moved to dismiss the count of grand larceny in the fourth degree and one of the counts of criminal possession of stolen property in the fourth degree (Penal Law § 165.45 [1]). This court reduced those two felony counts to the misdemeanors of petit larceny and criminal possession of stolen property in the fifth degree. The defendant was subsequently convicted by the jury of the two reduced misdemeanor counts and the other two remaining felony counts. This written decision sets forth the basis for the court’s ruling.
A person is guilty of grand larceny in the fourth degree or criminal possession of stolen property in the fourth degree when the value of the stolen property "exceeds one thousand dollars”. (Penal Law § 155.30 [1]; § 165.45 [1].) The term "value” as defined in Penal Law § 155.20 (1), "means the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime.” When the value of stolen property cannot be established by either its market value or its replacement cost, its value is deemed to be less than $250 (see, Penal Law § 155.20 [4]).
The market value of stolen property is the amount which the thief would have had to pay had he purchased the goods in *261 the market instead of stealing them (see, People v Irrizari, 5 NY2d 142 [1959]). This is the appropriate standard even if the thief steals merchandise not for sale, such as free goods or gifts (see, People v Colasanti, 35 NY2d 434 [1974]).
In analyzing "market value”, the New York Court of Appeals has recognized two legitimate markets, the wholesale market and the retail market.[1] The market value of property stolen from a wholesaler is the price at which a wholesaler could have sold the property. The market value of property stolen from a retailer is the price at which a retailer could have sold the property.
Both new and used property can be sold on the wholesale or retail market. The existence of a legitimate market for used goods contemplates that sales of the used items occur in the regular course of business, with some regularity and uniformity (see, People v Vientos, 79 NY2d 771 [1991], supra; People v Irrizari, supra). Therefore, just as in the case of new property, where a thief steals used property from a wholesaler or retailer, the market value of such property is the amount the thief would have had to pay had he purchased the used goods in that particular used market.
The market value of property stolen from a consumer is the price of the item reduced for any depreciation or change in its condition which affected its value at the time of the crime (see, e.g., People v Alicea, 25 NY2d 685 [1969] [book value of used car must be reduced to reflect its condition]; People v Harold, 22 NY2d 443 [1968] [value of pump purchased for $124 plus tax five days prior to theft must reflect that it was no longer new and the effect of the installation operation]; People v Medina, 111 AD2d 653 [1st Dept 1985] [condition of stolen jewelry and the extent of its use or deterioration must be considered]).
No statutory language, nor Court of Appeals or Appellate Division decision, has articulated any other basis for determining the value of stolen property other than its "market value” or its "replacement cost”.
The trial court in People v Barbuto (106 Misc 2d 542 [Sup Ct, Suffolk County 1980]) held that while sales tax may increase the cost to the buyer in the retail market, it does not increase the stolen property’s value. In Barbuto, the defendant fraudu *262 lently purchased a television set from a retail store with a bad check. Relying on the Tax Law and the NYCRR, that court ruled that the pretax selling price is the freely negotiated price in the market, and that sales tax is a distinct and separate charge which the retail seller is required to collect for the benefit of the State and locality. However, the trial court in People v Bazo (139 Misc 2d 1003 [Sup Ct, Kings County 1988]) disagreed that the pretax selling price alone is the market value, and held that sales tax should be considered as a component of the market value of goods stolen from an owner-consumer. In Bazo, the defendant stole, from an owner’s apartment, a television set which had been purchased a few days earlier. The Bazo court discusses a "postwholesale, postretail * * * consumer-seller market” in which a "well-informed” seller would seek to pass on the cost of sales tax to a "well-informed” buyer (at 1007).
Although reliance on the Tax Law alone should not determine how the Penal Law definition of value should be established, this court believes that the Barbuto tax analysis is sound, and that the Bazo analysis in reliance on a "consumer-seller market” is flawed. The Court of Appeals has recognized the wholesale market and the retail market as the only two legitimate markets for determining the market value of both new and used property. No "consumer-seller market” exists where goods are regularly and uniformly bought and sold. Only sales which occur in the regular course of business in a recognized wholesale or retail market can be relied upon to establish the market value of new or used property. As the Court of Appeals articulated in People v Vientos (supra, at 772), the fact "that an individual owner was free to sell used equipment to another person does not indicate the existence of a market for the used equipment, which contemplates that the sales occur with some regularity and uniformity”. Therefore, it is not sufficient, for purposes of determining the value of property, simply that a particular individual was willing to purchase the item for a specified price, since such an offer to purchase may be highly speculative (see, People v Kirkwood, 200 AD2d 409 [1st Dept 1994]).
Where property is stolen from a retail store, the store’s list price ordinarily reflects the property’s market value (see, People v Irrizari, 5 NY2d 142, supra; People v Wynn, 176 AD2d 375 [3d Dept 1991] [price tags on stolen garments]; People v Vanderhall, 168 AD2d 655 [2d Dept 1990] [value of video camera as reflected on price tag]; People v Basir, 141 AD2d 745 [2d Dept *263 1988] [value of skirt and blouse as reflected on price tag]; People v Felder, 134 AD2d 902 [4th Dept 1987] [price tags on leather jackets]). This method of valuation has been relied upon even where the item is fraudulently purchased by the thief (see, People v Solomon, 124 AD2d 840 [2d Dept 1986] [attempting to purchase jewelry with a stolen credit card]), or is stolen from the consumer after purchase (see, e.g., People v Harold, supra).
Without legislative intent to the contrary, there is no rationale for holding that stealing property from a retail store by an illegitimate purchase where tax is paid is criminal conduct on a greater scale than stealing that same property by shoplifting or burglary.[2] The manner in which the theft occurs does not change the property’s value under the Penal Law. Nor is there any basis to assess a different market value to stolen property recently purchased by a consumer simply because that consumer had just paid the retail sales tax imposed on the transaction.
The purpose of these penal statutes fixing the higher degrees of crimes is not related to regulating the economic market but to assessing the scale of criminal operations by the defendant (see, People v Colasanti, 35 NY2d, supra, at 437). The Legislature’s more serious treatment is predicated upon the worth of the stolen property, as reflected by the amount of its dollar value.[3] Imposing greater criminal liability dependent solely on whether or not sales tax is paid, has no rational relationship to an assessment of the gravity of the larcenous act. Rather, even where the consumer pays the tax, the thief would be arbitrarily penalized because of an inappropriate focus on the added cost to the victim. Such a focus on the economic loss to the victim is a proper consideration when the court is determining what statutorily authorized sentence or amount of restitution it will impose (see, CPL 390.30 [3]; Penal Law § 60.27). The Penal Law does not provide such a process for classifying the level of crime and its attendant criminal penalties. A defendant, found *264 guilty of higher felony level charges due to the addition of sales tax, would be subjected to greater punishment in no way related to a higher level of criminal conduct.
Sales tax does not enhance the value of property. Rather, it is itself calculated based upon the dollar value of the property. It therefore should not be used to elevate the seriousness of the charge by changing its classification and the punishment that can be imposed. This court, therefore, holds that the value of stolen property which is retail merchandise is its market value as reflected by the purchase price exclusive of any levied sales tax.
The trial evidence in this case established that the defendant stole retail merchandise having an aggregate value of exactly $1,000. To be found guilty of grand larceny in the fourth degree or criminal possession of stolen property in the fourth degree under Penal Law § 165.45 (1), the value of the stolen property must exceed $1,000. The Legislature’s inclusion of the word "exceeds” in the statutes may not simply be ignored (see, People v Teal, 196 NY 372 [1909]). Rather, the term must be construed according to its ordinary and accepted meaning (see, People v Eulo, 63 NY2d 341, 354 [1984]; McKinney’s Cons Laws of NY, Book 1, Statutes § 231). Accordingly, this court finds that a person may not be found guilty of a felony where he steals or possesses stolen property which has a market value as reflected by its sales price of exactly $1,000.
In light of the foregoing, the aggregate value of the stolen property did not exceed $1,000, thereby mandating the reduction of the felony charges of grand larceny in the fourth degree and criminal possession of stolen property in the fourth degree, as charged in the second count of the indictment, to the misdemeanors of petit larceny and criminal possession of stolen property in the fifth degree.

. The Court of Appeals has also recognized the value of stolen property on the black market when the stolen item is contraband such as illicit drugs not legally sold in a legitimate wholesale or retail market (see, People v Colasanti, supra; see also, People v Vientos, 79 NY2d 771 [1991]).

. The Legislature can always choose to define certain larcenous conduct as warranting separate and greater criminal sanctions, as it has already done where the stolen property is a credit card (Penal Law § 165.45 [2]) or where a larceny is committed by forgery with the intent to defraud (Penal Law § 170.10).

. Mem of State Exec Dept, 1986 McKinney’s Session Laws of NY, at 2960, 2961 ("A larger theft is more serious than a smaller one, and persons convicted of a larger theft should be accorded harsher punishment”); Governor’s Mem approving L 1986, ch 515,1986 McKinney’s Session Laws of NY, at 3174, 3175 ("A larger theft is more serious than a smaller one and should be punished accordingly”).