Albert REED *v.* STATE of Arkansas

CR 02-487                                    109 S.W.3d 665

Supreme Court of Arkansas
Opinion delivered May 1, 2003

[Substituted opinion upon mootness of petition for rehearing
delivered June 5, 2003.]

*William R. Simpson, Jr.*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Katherine Adams*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Albert Reed was convicted in the Pulaski County Circuit Court of capital murder and theft of property with a value greater than $500 but less than $2,500. He was sentenced to a term of life imprisonment and six years' imprisonment, respectively, with the sentences to run concurrently. He now appeals his conviction on the theft charge, arguing that the trial court erred in failing to grant his directed-verdict motion, because the State failed to introduce substantial evidence establishing the value of the stolen property. This case was certified to us from the Arkansas Court of Appeals; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R! 1-2(d). We agree with Appellant.

In the early morning hours of October 26, 2000, police were dispatched to an apartment complex at 701 South Elm Street after

a shooting was reported. When Officer Brian Grigsby, of the Little Rock Police Department, arrived on the scene, he discovered the body of a man, who had been shot, lying face down in the parking lot. Alonzo Bailey, a witness, approached the officer and explained what had happened leading up to the shooting. He told Grigsby that the victim was Rodney Allen and that he had been shot by Appellant. Bailey also gave Grigsby his sister's phone number and explained that his sister was dating Appellant, so Appellant may have gone to her home following the shooting. Appellant was subsequently arrested and charged with one count each of capital murder, first-degree battery, and theft of property.[1]

A jury trial was held on January 9, 2002. Shantarus Pace testified that at the time of the shooting, she was living in one of the apartments at Elm Street with Bailey. She explained that she knew Appellant because he was dating one of her friends. According to Pace, Appellant arrived at the apartment complex between 11:00 and 11:30 p.m on the evening of October 25. She was not sure when Allen arrived, but stated that he was there when she went outside around midnight. Sometime later, Pace heard gunshots and went to see what had happened. She then saw Appellant standing by the driver's side door of Allen's car firing a gun. According to Pace, she saw him fire at least two shots while Allen was still in the car. Pace stated that Allen managed to get out of the car through the passenger's side door, and Appellant then got in the driver's seat of Allen's car and was about to leave, when he noticed that Allen was still moving. By this time, David Mitchell had approached and was attempting to help Allen, when Appellant exited the car and fired several more shots at Allen, one of which struck Mitchell in the ankle. Appellant then left in Allen's 1978 white Chevrolet Caprice Classic.

Alonzo Bailey testified similarly, but further explained that he had been drinking with Appellant and Allen since earlier that evening. He explained that Appellant and Allen were friends, but admitted that he heard them arguing about a "little pocket change." The two men then left together to go to the liquor store and returned five to ten minutes later, according to Bailey. Sometime later, Allen left, but again returned to the parking lot.

---

[1] Prior to trial, the State *nolle prosequied* the first-degree battery charge.

Appellant stood at the driver's side door, talking with Allen for approximately ten minutes, and then suddenly took a gun from his pants and started shooting at Allen inside the car.

Bailey also testified that his younger brother was the previous owner of the white Caprice Classic and had owned it for about a year. He stated that he was not sure what his brother paid for the car when he bought it, but that it was not more than $500. He did not know how much Allen paid his brother when he bought the car. He did explain that once his brother bought the car, he fixed it up by installing televisions in the visors and putting Dayton tires on it. He further stated that he was with his brother when he had the televisions installed and that they cost around $200.

Robert Donham testified that on the morning of April 26, he was staying in a travel trailer at the Arkansas River Yacht Club in North Little Rock. He noticed an unusual vehicle parked in front of the Club's clubhouse. It was a white, older model Chevrolet Caprice Classic that had several bullet holes in it. Donham contacted the police who had the vehicle towed away.

Following the conclusion of the State's case, Appellant moved for a directed verdict, challenging the sufficiency of the evidence with regard to both the capital-murder charge and the theft charge. With regard to the former, Appellant argued that the State failed to prove that he acted with premeditation and deliberation. As for the latter charge, Appellant argued that the State failed to introduce substantial evidence that the Caprice Classic had a value in excess of $500. The trial court denied the first motion, and reserved a ruling on the theft charge.

Appellant was the only witness to testify for the defense. He stated that he and Allen were friends and had been joking with one another prior to the shooting. According to Appellant, while he was talking with Allen, Allen suddenly reached under the passenger's seat of his car. Appellant claimed that because he thought Allen was reaching for a gun, he reached for his own gun and started shooting. Appellant stated that the only reason he shot Allen was because he was afraid for his own life.

At the close of his case and following the testimony of a rebuttal witness called by the State, Appellant renewed his motions

for directed verdict. The trial court denied both motions, and the case was submitted to the jury. The jury returned guilty verdicts on both charges, and Appellant waived his right to be sentenced by the jury. As previously stated, the trial court then sentenced Appellant to life imprisonment and six years' imprisonment. This appeal followed.

The standard of review in cases challenging the sufficiency of the evidence is well established. We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Fairchild v. State*, 349 Ark. 147, 76 S.W.3d 884 (2002); *Branscum v. State*, 345 Ark. 21, 43 S.W.3d 148 (2001). This court has repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002). We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Haynes v. State*, 346 Ark. 388, 58 S.W.3d 336 (2001).

For his sole point on appeal, Appellant argues that the trial court erred in denying his motion for a directed verdict because the State failed to introduce substantial evidence that the car Appellant stole had a value in excess of $500. Appellant concedes, however, that he did not challenge the sufficiency of the evidence for misdemeanor theft, as his argument at trial was limited to the assertion that the State did not prove that the car was worth more than $500. The State counters that there was substantial evidence to support the conviction for theft in the form of testimony and photographs of the automobile.

Arkansas Code Annotated § 5-36-103 (Repl. 1997) provides that a person commits theft of property if he knowingly obtains the property of another person, by deception or by threat, with the purpose of depriving the owner thereof. "Value" is defined as the market value of the property at the time and place of the offense. *See* Ark. Code Ann. § 5-36-101(11)(A)(i) (Repl. 1997). This court has held that the State has the burden of proving the value of the property stolen, and the preferred method of

establishing value is by expert testimony. *Ayers v. State*, 334 Ark. 258, 975 S.W.2d 88 (1988). However, value may be sufficiently established by circumstances that clearly show a value in excess of the statutory requirement. *Coley v. State*, 302 Ark. 526, 790 S.W.2d 899 (1990).

This court has held that the original cost of property may be one factor considered by the jury in determining market value, as long as it is not too remote in time and relevance. *Jones v. State*, 276 Ark. 116, 632 S.W.2d 414 (1982); *see also Wright v. State*, 80 Ark. App. 114, 91 S.W.3d 553 (2002). In *Tillman v. State*, 271 Ark. 552, 609 S.W.2d 340 (1980), this court held that an owner's testimony that he purchased his television for $476 eighteen months prior to theft, that he had no problems with it, and that it was in good condition constituted substantial evidence of value over $100. Moreover, in *Williams v. State*, 252 Ark. 1289, 482 S.W.2d 810 (1972), this court held that there was substantial evidence from which a jury could have found the stolen property to be worth more than thirty-five dollars where the owner of four stolen trophies described them as "new" and testified that they would cost around ten dollars each.

Here, the only testimony related to the value of the car came from Alonzo Bailey, whose brother had sold the car to the victim. According to Bailey, he did not know how much his brother paid for the car when he bought it, but that it was not more than $500. Bailey further testified that his brother added televisions to the car, for which he paid approximately $200. Bailey also stated that his brother put Dayton tires on the car, but there was no testimony about the value of those tires. Bailey, a self-employed mechanic, stated that a car like the one at issue here was not worth $50 to him. Notably, there was no testimony or other evidence whatsoever regarding how much Allen paid for the car, or even how long ago Allen bought it.

We are unpersuaded by the State's argument that Bailey's testimony coupled with the eleven photographs of the car introduced at trial constituted substantial evidence. The State argues that the photographs could have been used by jurors in determining the car's value. The State relies on two cases in support of this proposition, but both cases are inapposite to the present matter. In

*Ayers*, 334 Ark. 258, 975 S.W.2d 88, the State introduced certified documents pertaining to the stolen vehicle from the Office of Motor Vehicles of the Department of Finance and Administration. Included in those documents was an invoice showing that the vehicle had been purchased new just one year prior to the theft for $19,390.20. The State also introduced a number of photographs showing the vehicle to be in good condition and without any obvious defects or damage. This court concluded that the invoice and photographs constituted substantial evidence from which the jury could reasonably conclude that the depreciation had not been so great as to reduce the car's value from over $19,000 to under $2,500 in one year's time.

Similarly, in *Stewart v. State*, 302 Ark. 35, 786 S.W.2d 827 (1990), a photograph was introduced to corroborate independent evidence from the vehicle's owner about what she paid for the vehicle, how much she still owed on it, and how old it was. Again, the photograph aided in establishing the value of the car by showing the car to be in excellent condition.

The pictures in the present case would have established, if anything, that the car was worth less because it showed the damage, including a splintered steering wheel, the car had sustained as a result of the shooting. Thus, *Ayers* and *Stewart* are distinguishable because in those cases there was independent evidence establishing the cars' value, and the photographs depicted cars that were in excellent condition.

Even viewing the evidence in a light most favorable to the State, it is apparent that there was insufficient evidence to support the jury's determination that Appellant had committed theft of property with a value in excess of $500. In *Cannon v. State*, 265 Ark. 270, 578 S.W.2d 20 (1979), this court held that it is not proper to leave a jury to the individual ideas of the jurors to determine value.

We do note, however, that the car had some value, and it is undisputed that Appellant fled in Allen's car following the shooting. Pace and Bailey both testified that after Appellant shot Allen, he left in Allen's vehicle. Therefore, there was ample evidence to establish that he exercised unauthorized control over Allen's vehicle. Moreover, this court has held that there is no

minimum value requirement for misdemeanor theft of property. *See O'Riordan v. State*, 281 Ark. 424, 665 S.W.2d 255 (1984). There was, then, sufficient evidence to support a conviction of misdemeanor theft, which carries a term of one year's imprisonment. We, thus, affirm Appellant's conviction as modified.

In accordance with Ark. Sup. Ct. R. 4-3(h), the transcript of the record before us has been reviewed for adverse rulings objected to by Appellant, but not argued on appeal, and no such reversible errors were found. *See Sansevero v. State*, 345 Ark. 307, 45 S.W.3d 840 (2001).

BROWN, J., not participating.