**STATE of Iowa, Appellee,**

v.

**Michael James KLUGE, Appellant.**

**No. 02–0664.**

Court of Appeals of Iowa.

Oct. 29, 2003.

Linda Del Gallo, State Appellate Defender, and Tricia A. Johnston, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, Thomas S. Mullin, County Attorney, and Terry C. Ganzel, Assistant County Attorney, for appellee.

Heard by VOGEL, P.J., and MAHAN and ZIMMER, JJ.

VOGEL, P.J.

Michael Kluge appeals his conviction, following a jury trial, for second-degree theft as a habitual offender, in violation of Iowa Code sections 714.1(2), 714.2(2) and 902.8 (2001), contending the court erred in instructing the jury it could include sales tax as part of the value of the stolen property. We hold, under these facts, that sales tax should not have been considered as part of the "value" of the stolen item. Because it is possible the jury included sales tax and that inclusion may have raised the level of crime from an aggravated misdemeanor to a class "D" felony, we must affirm the conviction for theft but reverse and remand for a new trial on the issue of value of the property.

### Background Facts and Proceedings.

On December 20, 2000, Michael Kluge leased a tile saw from United Rentals in Sioux City. When he did not return the saw the following day as required by the rental agreement, an employee with United Rentals attempted unsuccessfully to contact Kluge at a phone number and address given by Kluge. United Rentals then reported to police that the saw had been stolen. The saw was later located at a South Sioux City, Nebraska, pawnshop. The pawnshop's owner told police a man who identified himself as Michael Kluge had attempted to pawn the saw but could not produce a required picture identification. Kluge then left the pawn shop and returned with another individual named Scott Everton who was able to present a picture identification. The pawnshop agreed to purchase the saw for $200.

The State subsequently charged Kluge with second-degree theft, a class "D" felony, as a habitual offender, in violation of Iowa Code sections 714.1(2), 714.2(2) and 902.8. Following the presentation of evidence, the court instructed the jury that when considering the theft charge, "[t]he 'value' of the property includes sales tax." The jury, by special interrogatory, returned a verdict of "[g]uilty of the crime of Theft" and found the value of the property taken to be, "[m]ore than $1000 but not more than $10,000." The court sentenced Kluge as a habitual offender to an indeterminate prison term of fifteen years. Kluge appeals.

### The Value of the Property and Sales Tax.

Second-degree theft requires a finding that the value of the stolen property was over $1000 but not more than $10,000. Iowa Code § 714.2(2). The parties differed as to the value of the stolen saw. Kluge presented evidence that United Rentals purchased the saw for $735 in 1995, while the State presented evidence that, had Kluge purchased the saw from United Rentals, it would have cost $995, plus sales tax, for a total of $1064.65. Also, an assistant manager for United Rentals testified the replacement cost of the saw was $1349.

The court instructed the jury as follows:

The "value" of property means its highest value by any reasonable standard at the time of the theft. Reasonable value includes, but is not limited to, the property's actual value, its replacement value, or its market value within the community.

The "value" of the property includes sales tax.

On appeal, Kluge maintains the court erred in instructing the jury it could consider sales tax when arriving at a value of the stolen property.

It is impossible to determine from the jury's verdict what it considered to be a "reasonable value" of the saw. If the $995 figure handwritten on the rental agreement was the figure it found to be the reasonable value, and if consideration of sales tax was improperly added to that value, as Kluge claims, then the jury should have determined by special interrogatory the value of the saw to be "more than $500 but not more than $1000." See Iowa Code § 714.2(3). This would have reduced Kluge's conviction from a class "D" felony to an aggravated misdemeanor.

We first note the statute is silent as to the inclusion of sales tax in the computation of the value of stolen property. Iowa Code §§ 714.2; 3. We believe the statute's focus on "value" and its silence as to the addition of sales tax is significant; however, it is not conclusive, and we must therefore proceed to determine the legislature's intent. See Van Baale v. City of Des Moines, 550 N.W.2d 153, 155 (Iowa 1996); Goebel v. City of Cedar Rapids, 267 N.W.2d 388, 392 (Iowa 1978).

■ We start by looking at the words used by the legislature. State v. Owens, 635 N.W.2d 478, 486 (Iowa 2001). Clearly, Iowa's statutory scheme utilizes the general concept of "value." See Iowa Code §§ 714.2 (classifying the degree of theft based on the dollar value of the property); 714.3 (defining the concept of value, giving non-exclusive examples such as market, replacement, and actual value). Thus the district court properly directed the jury to assess the saw at its "highest value by any reasonable standard." Iowa Code § 714.3. In addition, a "reasonable standard" may include "market value within the community, actual value, or replacement value." Iowa Code § 714.3. Moreover, it is settled the jury is to focus on that standard which produces the higher of several possible

values. *State v. Scott*, 405 N.W.2d 829, 833 (Iowa 1987). But these statements do not answer the question of whether a sales tax is a component of that value.

In ascertaining legislative intent, we believe the nature of a tax, in general, and a sales tax, specifically, is important to examine. A tax may be considered "a pecuniary burden laid upon individuals or property to support the government." Black's Law Dictionary 1628 (Revised 4th ed.1968). Webster's defines "sales tax" as "a tax levied on the sale of goods and services that is usually calculated as a percentage of the purchase price and collected by the seller." Webster's Ninth New Collegiate Dictionary 1038 (1986). The Louisiana Supreme Court has aptly described a sales tax as a distinct and separate charge which the retail seller is required to collect as a pass through entity for the benefit of the state and locality. *State Farm Mut. Auto. Ins. Co. v. Berthelot*, 732 So.2d 1230, 1234–35 (La.1999). It also noted Louisiana's sales and use tax is an excise tax, a tax upon the transaction itself, not the property involved in the transaction. *Id.* at 1235. Iowa Code section 422.43(1) imposes a "tax of five percent upon the gross receipts from all sales of tangible personal property ... sold at retail in the state to consumers or users...." Iowa Code § 422.43(1).

When viewed in such terms, it appears a sales tax is not truly a component of the value of a good or service, but rather a separate amount collected by a retailer for the benefit of a governmental taxing authority. It is a fee collected because of a transaction. *See* Iowa Code 422.43(1). At least two New York courts have reached a

similar conclusion holding sales tax may not be considered when determining the degree of larceny an individual has committed. *See People v. Medjdoubi*, 173 Misc.2d 259, 661 N.Y.S.2d 502, 506 (N.Y. 1997); *People v. Barbuto*, 106 Misc.2d 542, 434 N.Y.S.2d 120, 121 (N.Y.1980). Similar to the Iowa statutory scheme, the New York statute at issue in *Medjdoubi* called for the jury to determine the "value" of a good, described as "the market value of the property at the time and place of the crime ... or the cost of replacement of the property." *Medjdoubi*, 661 N.Y.S.2d at 504. We concur with the reasoning that, while a sales tax may increase the "cost" of an item, it does not increase its "value." *Medjdoubi*, 661 N.Y.S.2d at 506, *Barbuto*, 434 N.Y.S.2d at 122.

With the determination a sales tax does not increase the value of property, we conclude our statutory scheme under section 714.2 does not allow for the addition of sales tax on an item not yet purchased.[1] It therefore should not be used to elevate the degree of a theft charge in the type of scenario presented here, where at issue is the theft of a tangible good from a retailer. Accordingly, we conclude the trial court erroneously instructed the jury the value of property for purposes of arriving at a degree of theft may include a consideration of sales tax. Because we cannot determine from the jury's verdict whether it based its finding of guilty of second-degree theft on the $995 (plus sales tax) figure or the $1349 replacement cost figure we must remand for a new trial. *See e.g. State v. Means*, 211 N.W.2d 283, 285 (Iowa 1973). The instruction clearly opened the possibility of

---

1. By this holding, we make no determination as to other types of theft scenarios that may arise in the future, such as where an individual is accused of fraudulently purchasing an item with a credit card. *See United States v.* *Draves*, 103 F.3d 1328, 1332 (7th Cir.1997) (holding sales tax is includable in calculating the aggregate value in a credit card fraud conviction).

prejudicing Kluge by elevating what may have been an aggravated misdemeanor to a class "D" felony.

We therefore affirm Kluge's conviction but remand for a new trial for the sole purpose of allowing the jury to make a finding as to the value of the saw. The jury shall not consider sales tax in making this finding.

### Speedy Trial.

Kluge further maintains the court erred in denying his motion to dismiss in which he argued the waiver of his right to a speedy trial was involuntary. Our scope of review of speedy trial questions under Iowa Rule of Criminal Procedure 2.33(2)(*b*) is for corrections of errors at law. *State v. Finn*, 469 N.W.2d 692, 693 (Iowa 1991). We recognize the trial court's discretion to refuse to dismiss within the parameters of the recognized exceptions to the speedy trial mandate. *See State v. Todd*, 468 N.W.2d 462, 470 (Iowa 1991). Thus, we ultimately look to whether the trial court abused its discretion. *Id.*

■ Rule 2.33(2)(*b*) requires the State to bring an accused to trial within ninety days of the filing of the trial information. Courts are required to dismiss an indictment or information if the trial is not commenced within 90 days after filing unless the accused has waived the speedy trial right, the delay is attributable to the accused, or good cause exists for the delay. *State v. Olson*, 528 N.W.2d 651, 653 (Iowa Ct.App.1995). Here, Kluge waived his speedy trial rights on April 25, 2001, well before the speedy trial deadline. However, he claims that waiver was not voluntary. *See State v. Buck*, 510 N.W.2d 850, 853 (Iowa 1994) (waiver of jury trial must be voluntary).

■ We conclude the record supports the district court's finding that Kluge voluntarily waived his right to a speedy trial. Following the hearing on Kluge's motion to continue, the district court made the following notation:

The court fully informed the defendant as to his right to a speedy trial under Rule [2.33(2)(*b*)] of the Iowa Rules of Criminal Procedure. The defendant stated that he understood his right to a speedy trial under Rule [2.33(2)(*b*)] and that he wished to waive his right to a speedy trial.

Although Kluge now maintains he was forced by circumstances to waive speedy trial, his tune below was different. In his motion to continue, Kluge claimed he was not prepared to proceed to trial because (1) his pretrial mistakes concerning defense requests and misjudgments regarding court procedure, (2) he was overcome with trial preparation, and (3) he was then seeking a discretionary review to the Iowa Supreme Court regarding a motion to suppress.

These stated grounds confirm that Kluge held rational and tactical reasons for seeking to continue the trial date. We find no error in the trial court's conclusion that Kluge knowingly, intelligently and voluntarily waived his right to a speedy trial.

**CONVICTION AFFIRMED; REMANDED FOR NEW TRIAL ON VALUE OF SAW.**