Billy Joe RUSSELL *v.* STATE of Arkansas

CR 06-180

242 S.W.3d 265

Supreme Court of Arkansas
Opinion delivered November 2, 2006

*William R. Simpson, Jr.*, Public Defender, *Mac Carder*, Deputy Public Defender, by: *Mac Golden* and *Clint Miller*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Misty Wilson Borkowski*, Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. We are asked in this appeal to address an issue of first impression: in a theft-by-receiving case, should the sales tax paid on an item be included when determining the value of the item stolen? Appellant Billy Joe Russell was charged with theft by receiving; the charges stemmed from the theft of a Sears generator that had been purchased by Morris Gilmore. Gilmore testified that he bought the generator on January 18, 2004, and that it cost $499.99, plus $49.99 for an extended warranty and $39.19 in sales tax, for a total of $589.17. The State introduced into evidence Gilmore's sales receipt, which reflected these amounts.

At the conclusion of the State's case, Russell moved for a directed verdict, arguing that the State had not proven that the value of the stolen property was in excess of $500. The trial court denied Russell's motion, giving its reasons in the following colloquy:

> DEFENSE: [W]hat was actually paid for [the] goods was $589 and some change as the gentleman had testified. That's the *cost* of that generator. The *value* of that generator is $499.99.
>
> COURT: Well, okay. If he had taken it back to Sears, he would have gotten $589.17 back, so I'm denying your motion on that.
>
> DEFENSE: I don't know ...
>
> STATE: Your Honor ...
>
> DEFENSE: Judge, I just don't know if that is true. Number one, he'd had that generator for over six months.
>
> COURT: That's what he testified to.
>
> DEFENSE: If there's no one from Sears to testify that they would have accepted it —

COURT: Well, I'm going with what he testified to on that because I'm certain that that's the way it would be.

(Emphasis added.) The trial court denied Russell's renewed directed-verdict motion at the conclusion of the trial and convicted Russell of theft by receiving, sentencing him to ten years in prison.

On appeal, Russell challenges the sufficiency of the evidence supporting the verdict. A motion to dismiss at a bench trial and a motion for a directed verdict at a jury trial are challenges to the sufficiency of the evidence. *See* Ark. R. Crim. P. 33.1 (2004); *Graham v. State*, 365 Ark. 274, 229 S.W.3d 30 (2006). When a defendant challenges the sufficiency of the evidence that led to a conviction, the evidence is viewed in the light most favorable to the State. *See Gamble v. State*, 351 Ark. 541, 95 S.W.3d 755 (2003). Only evidence supporting the verdict will be considered. *Id.* The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* The question of what constitutes the "value" of stolen property, however, is a question of law, which this court reviews *de novo. See Winkle v. State*, 366 Ark. 318, 235 S.W.3d 482 (2006).

As noted above, Russell was convicted of theft by receiving, a Class C felony. A person commits the offense of theft by receiving if he or she "receives, retains, or disposes of stolen property of another person: (1) [k]nowing that the property was stolen; or (2) [h]aving good reason to believe the property was stolen." Ark. Code Ann. § 5-36-106(a) (Repl. 2006). The offense is a Class C felony if "[t]he value of the property is less than two thousand five hundred dollars ($2,500) but more than five hundred dollars ($500)[,]" Ark. Code Ann. § 5-36-106(e)(2)(A) (Repl. 2006), and a "Class A misdemeanor if otherwise committed." Ark. Code Ann. § 5-36-106(e)(3) (Repl. 2006).

"Value" is defined, in pertinent part, as "[t]he market value of a property . . . at the time and place of the offense, or if the market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the of-fense[.]" Ark. Code Ann. § 5-36-101(12)(A)(i) (Repl. 2006). Our court has held that the State has the burden of proving the value of the property stolen, and the preferred method of establishing value is by expert testimony. *Reed v. State*, 353 Ark. 22, 26-27, 109 S.W.3d 665, 668 (2003); *Ayers v. State*, 334 Ark. 258, 975 S.W.2d 88 (1998). However, value may be sufficiently established by circumstances that clearly show a value in excess of the statutory

requirement. *Reed, supra* (citing *Coley v. State,* 302 Ark. 526, 790 S.W.2d 899 (1990)). This court has also held that the original cost of property may be one factor considered by the fact-finder in determining market value, as long as it is not too remote in time and relevance. *Reed, supra; Jones v. State,* 276 Ark. 116, 632 S.W.2d 414 (1982).

Russell argues that the State failed to prove that the value of the stolen generator was in excess of $500. He points out that Gilmore purchased the generator for $499.99, but additionally paid sales taxes of $39.19 and bought an extended warranty for $49.99, making the total of the purchase $589.17.

In his opening brief, Russell raises three basic premises. First, he asserts that, because Gilmore paid Sears only $499.99 for the generator, that amount was the value of the item when it was stolen; it was only after taxes and the purchase of the warranty were added that the monetary figure exceeded $500. Second, he urges that the State failed to prove that the generator was valued in excess of $500 at the time of the offense because there was testimony that the generator showed signs of wear at the time it was stolen and re-sold to another individual named Dennis Chudy. Third, he notes that the trial court ruled that if Gilmore had taken the generator back, he would have received the full amount paid, but the State did not introduce evidence regarding Sears's return policy.

The State does not address this third point in its brief. However, this court has held that it is not proper to leave a fact finder to the individual ideas of that fact finder to determine value. *See Cannon v. State,* 265 Ark. 270, 578 S.W.2d 20 (1979); *Kansas City Southern Ry. Co. v. Biggs,* 181 Ark. 818, 28 S.W.2d 68 (1930). The *Cannon* court further held that, while a fact-finder may apply its own common knowledge and experience in concluding that the requisite value has been shown, such experience and common knowledge "are only to be applied to [the] evidence adduced." *Cannon,* 265 Ark. at 273, 578 S.W.2d at 22 (citing *Missouri Pacific R.R. Co. v. Benham,* 192 Ark. 35, 89 S.W.2d 928 (1936)). Here, the State adduced *no* evidence pertaining to Sears's return policies; therefore, the trial court erred in concluding, based on its "certain[ty] that that's the way it would be," that Sears would have refunded the full $589.17 to Gilmore.

We next address an argument that the State does discuss — namely, that the inclusion of the amount paid for the sales tax and

the warranty increased the "value" of the generator over the $500 threshold for a Class C felony. We begin our analysis by pointing out that, if the sales tax and warranty amounts are excluded, the State clearly failed to meet its burden of proving that the stolen property was valued in excess of the felony threshold of $500, because the generator itself cost only $499.99.

There is no Arkansas case law directly on point, but the jurisdictions that have considered the issue have generally concluded that a sales tax is not truly a component of the value of a good or service. *See, e.g., State v. Kluge*, 672 N.W.2d 506, 509 (Iowa Ct. App. 2003). Rather, the tax is a "separate amount collected by a retailer for the benefit of a governmental taxing authority. It is a fee collected because of a transaction." *Id.* At least two lower courts in New York have likewise concluded that the value of stolen goods is the market value of those goods as reflected by the purchase price, exclusive of any levied sales taxes. *See People v. Medjdoubi*, 173 Misc. 2d 259, 661 N.Y.S.2d 502 (1997); *People v. Barbuto*, 106 Misc. 2d 542, 434 N.Y.S.2d 120 (1980); *but see People v. Bazo*, 139 Misc. 2d 1003, 529 N.Y.S.2d 432 (1988) (concluding that the market value of a stolen item was to be determined by the "consumer-seller" market, in which a reasonable buyer would consider the sales tax in determining what he or she would pay for the item).

In *People v. Medjdoubi, supra,* the court reasoned that the purpose of the theft statutes "fixing the higher degrees of crimes is not related to regulating the economic market but to assessing the scale of criminal operations by the defendant." *Medjdoubi,* 173 Misc. 2d at 263, 661 N.Y.S.2d at 506. The court continued as follows:

> The Legislature's more serious treatment is predicated upon the worth of the stolen property as reflected by the amount of its dollar value. Imposing greater criminal liability dependent solely on whether or not sales tax is paid, has no rational relationship to an assessment of the gravity of the larcenous act. Rather, even where the consumer pays the tax, the thief would be arbitrarily penalized because of an inappropriate focus on the added cost to the victim. Such a focus on the economic loss to the victim is a proper consideration when the court is determining what statutorily authorized sentence or amount of restitution it will impose [citations omitted]. The Penal Law does not provide such a process for classifying the level of crime and its attendant criminal penalties. A defendant, found guilty of higher felony level charges due to the

addition of sales tax, would be subjected to greater punishment in no way related to a higher level of criminal conduct.

> *Sales tax does not enhance the value of property. Rather, it is itself calculated based upon the dollar value of the property.* It therefore should not be used to elevate the seriousness of the charge by changing its classification and the punishment that can be imposed. This court, therefore, holds that the value of stolen property which is retail merchandise is its market value as reflected by the purchase price exclusive of any levied sales tax.

*Id.* at 263-64, 661 N.Y.S.2d at 506 (emphasis added).

Similarly, in *People v. Barbuto, supra,* the New York court noted that the New York tax statutes clearly provided that a vendor was to collect taxes from each customer and hold those taxes as a trustee for and on account of the State, and that the actual selling price of the goods and the sales tax to be collected thereon were separate and distinct items. *Barbuto,* 106 Misc. 2d at 544, 434 N.Y.S.2d at 121. Therefore, "[t]he rational conclusion is that, *while a sales tax may increase the cost of an object, it does not increase the value thereof." Id.* (emphasis added).

In the *Kluge* case cited above, appellant Kluge was convicted of second-degree theft after he failed to return a tile saw to the store from which he had rented it. In Iowa, second-degree theft requires a finding that the value of the stolen property was over $1000 but not more than $10,000. *Kluge,* 672 N.W.2d at 508 (citing Iowa Code § 714.2(2) (2001)). The State presented evidence that, had Kluge purchased the saw, it would have cost $995, plus sales tax, for a total of $1064.65. *Id.*

On appeal, Kluge argued that the trial court had improperly included the sales tax in determining the value of the saw. The Court of Appeals of Iowa reasoned that, because the theft statute was silent as to the inclusion of sales tax in the computation of the value of stolen property, it was necessary to determine the legislature's intent. *Id.*

> In ascertaining legislative intent, we believe the nature of a tax, in general, and a sales tax specifically, is important to examine. A tax may be considered "a pecuniary burden laid upon individuals or property to support the government." *Black's Law Dictionary* 1628 (Revised 4th ed. 1968). *Webster's* defines "sales tax" as "a tax levied on the sale of goods and services that is usually calculated as a

> percentage of the purchase price and collected by the seller." *Webster's Ninth New Collegiate Dictionary*, 1038 (1986). . . . Iowa Code section 422.43(1) imposes a "tax of five percent upon the gross receipts from all sales of tangible personal property . . . sold at retail in the state to consumers or users[.]" Iowa Code § 422.43(1).

*Id.* at 509. Accordingly, the Iowa court concluded that a sales tax did not increase the value of property, and therefore, that state's statutory scheme did not allow for sales taxes to be used to elevate the degree of a theft charge where the issue was the theft of a tangible good from a retailer. *Id.*

The Louisiana Supreme Court has considered whether an insurance company could recover a sales tax payment in a subrogation claim on behalf of its insured against a tortfeasor who caused the total loss of the tort victim's vehicle. *See State Farm Mut. Auto. Ins. Co. v. Berthelot*, 732 So. 2d 1230, 1231 (La. 1999). The insurance policy in that case provided that the limits of State Farm's liability for loss to property was the lower of the actual cash value, or the cost of repair or replacement. Following the total loss to its insured's vehicle, State Farm calculated its payment to the insured to include a reimbursement for sales tax. The tortfeasor, Berthelot, and his insurance company paid the cash value for the totaled car, but refused to pay the sales tax. State Farm filed suit, and the trial court ordered Berthelot to pay the sales tax. *Id.* at 1232.

On appeal, the Louisiana Court of Appeals affirmed, but the Supreme Court reversed, pointing out that "a sales tax is a distinct and separate charge [that] the retail seller is required to collect as a pass-through entity for the benefit of the state and locality." *Id.* at 1234-35. Moreover, the court noted that Louisiana's sales and use tax was "an excise tax, a tax upon the transaction itself, not the property involved in the transaction." *Id.* at 1235. Therefore, the court concluded as follows:

> [W]hile it may be said that sales tax *may increase the cost* to the buyer in the retail market, it is equally clear that *it does not increase the value of the property purchased*. Simply stated, . . . a sales tax is a mandatory cost [that] state and local governments have added to the sale transaction, over and above the value of the purchased property.

*Id.* (emphasis added).

In Arkansas, as in Iowa and Louisiana, the sales tax is an excise tax "upon the gross proceeds or gross receipts derived from

all sales to any person" of goods and services enumerated in the statute, including "[t]angible personal property[.]" Ark. Code Ann. § 26-52-301(1) (Repl. 1997 & Supp. 2005). A sales tax is a tax "imposed on the sale of goods and services" that is usually "measured as a percentage of their price." *Black's Law Dictionary* 1498 (8th ed. 2004). Clearly, the sales tax is a cost imposed on the transaction. It does not in any way increase or enhance the "value" of the property. Therefore, we hold that sales taxes are not properly considered a component of the value of an item of stolen property, and we conclude that the trial court erred in including the sales taxes in computing the generator's value.[1]

Finally, we must address the State's argument that the inclusion of the $49.99 warranty in the purchase price caused the "value" of the generator to be in excess of $500. The State claims that because Gilmore bought the warranty when he bought the generator, Russell "not only stole a generator, but he stole a generator that was under warranty." In support of this contention, the State cites *Hardrick v. State*, 47 Ark. App. 105, 885 S.W.2d 910 (1994), for the proposition that "[i]t is the owner's present interest in the property that the law seeks to protect." *Hardrick*, 47 Ark. App. at 111, 885 S.W.2d at 913. However, neither *Hardrick* nor any other reported Arkansas case holds that the price of an optional extended warranty should be included in the calculation of the value of stolen property.

---

[1] Our conclusion is strengthened by reference to the general rule that, in interpreting a penal statute, "[i]t is well settled that penal statutes are strictly construed with all doubts resolved in favor of the defendant, and nothing is taken as intended which is not clearly expressed." *Hunt v. State*, 354 Ark. 682, 128 S.W.3d 820 (2003). The basic rule of statutory construction, to which all other interpretive guides must yield, is to give effect to the intent of the legislature. *Id.* However, even a penal statute must not be construed so strictly as to defeat the obvious intent of the legislature. *Russell v. State*, 295 Ark. 619, 751 S.W.2d 334 (1988). In the present case, construing the theft-by-receiving statute to exclude the amount of any sales taxes paid would *not* defeat the intent of the legislature. The General Assembly clearly defined the "value" of stolen property to mean the "market value of a property . . . *at the time and place of the offense.*" Ark. Code Ann. § 5-36-101(12)(A)(i) (Repl. 2006). Given this definition, it is logical and reasonable to exclude any sales tax paid from a computation of the "value" of property, especially when, as here, the property is stolen from one who purchased the property some time in the past. The sales tax is a fee on the sales transaction, collected at the time the transaction occurred. Here, the theft occurred six months or so after the sales transaction. Clearly, the sales tax was in no way involved in the later theft, nor was the "value" of the generator at the time of the theft affected or enhanced by the collection of the sales tax six months earlier.

In *Chappelle v. United States*, 736 A.2d 212 (D.C. 1999), the District of Columbia Court of Appeals held that the cost of a warranty should not be included, because "the obligations encompassed in the agreement were not exclusive to the stolen telephone and thus arguably an integral part of its 'value.' " *Chappelle*, 736 A.2d at 216. Rather, the court held, because the warranty contract would "carry over" to the next phone that the owner purchased, "the cost of these transferable ancillary services cannot be considered in determining the value of the property taken." *Id.*

In the instant case, the State introduced no evidence that Russell received a warranty on the stolen generator, or even that Gilmore's warranty was stolen. Citing *Chappelle, supra*, Russell notes that the State "failed to prove at trial that the warranty Mr. Gilmore purchased was exclusive to the generator at issue and would not cover any replacement generator he might have purchased." We agree, and hold that the cost of the warranty was improperly included in the computation of the generator's value.

In sum, because the sales tax should not have been included in computing the value of the generator, and the State failed to prove that the warranty was stolen along with the generator, Russell's Class C felony theft conviction cannot stand. However, Russell does not challenge the sufficiency of the evidence showing that he was generally guilty of theft by receiving. As the value of the generator was, at most, $499.99, Russell still stands convicted of a Class A misdemeanor. *See* § 5-36-106(e)(3); *see also Cannon v. State*, 265 Ark. at 274, 578 S.W.2d at 22 (where there was no contention that the evidence did not warrant a finding that appellant was guilty of theft by receiving, any error in the denial of appellant's motion to dismiss could be corrected by modifying the judgment to reduce it to an appropriate sentence for a misdemeanor). Accordingly, Russell's conviction is affirmed as modified, and his sentence is likewise modified to reflect the maximum sentence for a Class A misdemeanor of one year; *see* Ark. Code Ann. § 5-4-401(b)(1) (Repl. 2006), with credit for any time Russell has already served. *See Cannon, supra; see also Reed v. State*, 353 Ark. at 28, 109 S.W.3d at 669.

Affirmed as modified.

CORBIN, DICKEY and GUNTER, JJ., dissent.

JIM GUNTER, Justice, dissenting. I respectfully dissent, as I believe that the value of the property in this case included the

sales tax paid by appellant and would therefore affirm the judgment of the circuit court. The majority refers to this case as one of first impression, ignores our case law, and then proceeds to rely upon the case law of other jurisdictions. In my view, there is no need to resort to the case law of other jurisdictions, as our own statute and case law require us to affirm.

Appellant was charged with theft by receiving property having a "value . . . less than two thousand five hundred dollars ($2,500) but more than five hundred dollars ($500)." Ark. Code Ann. § 5-36-106(e)(2)(A) (Repl. 2006). "Value" means "[t]he market value of a property or service at the time and place of the offense, or if the market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense." Ark. Code Ann. § 5-36-101(12)(A)(i) (Repl. 2006). This court has held that the "original cost of property may be one factor" considered in determining market value. *Reed v. State*, 353 Ark. 22, 27, 109 S.W.3d 665, 668 (2003). In *Tillman v. State*, 271 Ark. 552, 609 S.W.2d 340 (1980), we held that the owner's testimony of what he paid for the stolen item eighteen months before the theft constituted substantial evidence of value. Finally, we said in *Cannon v. State*, 265 Ark. 270, 273, 578 S.W.2d 20, 22 (1979), that the market value of a car is "what it will bring on the open market when sold by a willing seller to a willing and able buyer." "Evidence of the purchase price recently paid for the property may be evidence of market value when admitted without objection." *Id.*

In this case, the owner of the generator, Mr. Gilmore, testified that he purchased the generator at Sears and paid $589.17. He provided a receipt to support his testimony. This is evidence of what a willing buyer, Mr. Gilmore, paid to a willing seller, Sears, just six months before the theft. *See Cannon, supra*; *People v. Bazo*, 139 Misc. 2d 1003, 529 N.Y.S.2d 432 (1988) (concluding that the market value of a stolen item is determined by the "consumer-seller" market, in which a reasonable buyer would consider the sales tax in determining what he or she would pay for the item). Mr. Gilmore also testified that he had never taken the generator out of the box. Further, it was undisputed that the generator was still in the box when it was stolen and appeared to be unused. In my view, this is substantial evidence to support the court's conclusion that the value of the generator exceeded $500. The trier of fact is free to believe all or part of any witness's testimony and may

resolve questions of conflicting testimony and inconsistent evidence. *Wilson v. State*, 365 Ark. 664, 232 S.W.3d 455 (2006). Accordingly, I would affirm.

CORBIN and DICKEY, JJ., join this dissent.